**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

OLEG V. DERIPASKA,

        Plaintiff,

v.

THE ASSOCIATED PRESS,

        Defendant.

Case No. 1:17-cv-00913-ESH

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANT'S
SPECIAL MOTION TO DISMISS UNDER THE D.C. ANTI-SLAPP ACT**

LEVINE SULLIVAN KOCH & SCHULZ, LLP

*Of Counsel:*

Karen Kaiser
Brian Barrett
The Associated Press
200 Liberty Street
New York, NY 10281
Telephone: (212) 621-7547
Fax: (212) 506-6131
kkaiser@ap.org
bbarrett@ap.org

David A. Schulz (D.C. Bar No. 459197)
Chad R. Bowman (D.C. Bar No. 484150)
Mara J. Gassmann (D.C. Bar No. 1014532)
Maxwell S. Mishkin (D.C. Bar No. 1031356)

1899 L Street, N.W., Suite 200
Washington, D.C. 20036
Telephone: (202) 508-1136
Fax: (202) 861-9888
dschulz@lskslaw.com
cbowman@lskslaw.com
mgassmann@lskslaw.com
mmishkin@lskslaw.com

*Counsel for Defendant The Associated Press*

Dated:  September 8, 2017

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................................... ii

INTRODUCTION ......................................................................................................................... 1

ARGUMENT ................................................................................................................................. 3

I.   DETERMINING WHETHER THE ANTI-SLAPP ACT APPLIES IN
     FEDERAL COURT IS NOT SOLELY A FEDERAL QUESTION ................................... 3

II.  DERIPASKA'S ATTEMPTS TO CONJURE UP A NEW CONFLICT ARE
     WITHOUT MERIT ............................................................................................................. 5

     A.   The Anti-SLAPP Act Does Not Conflict With Rule 56 .......................................... 5

     B.   The Anti-SLAPP Act Does Not Conflict With Rule 12 .......................................... 8

III. DERIPASKA'S ARGUMENT THAT THIS COURT MUST KEEP
     FOLLOWING *ABBAS* IS UNFOUNDED ......................................................................... 10

IV.  DERIPASKA'S BASELESS REQUEST FOR DISCOVERY SHOULD BE
     DENIED ............................................................................................................................. 14

V.   DERIPASKA'S COMPLAINT MUST BE DISMISSED UNDER THE
     ANTI-SLAPP ACT ............................................................................................................ 16

CONCLUSION ............................................................................................................................. 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbas v. Foreign Policy Group, LLC*,
    783 F.3d 1328 (D.C. Cir. 2015) ....................................................................1, 3, 4, 9, 11, 13

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ..........................................................................................................14

*Burke v. Air Serv International, Inc.*,
    685 F.3d 1102 (D.C. Cir. 2012) .........................................................................................4

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ...........................................................................................................5

*Competitive Enterprise Institute v. Mann*,
    150 A.3d 1213 (D.C. 2016) .....................................................................1, 4, 5, 6, 8, 12

*Easaw v. Newport*,
    --- F. Supp. 3d ---, 2017 WL 2062851 (D.D.C. May 12, 2017) .........................................1, 12

*Erie Railroad Co. v. Tompkins*,
    304 U.S. 64 (1938) .............................................................................................................1

*Friends for All Children, Inc. v. Lockheed Aircraft Corp.*,
    746 F.2d 816 (D.C. Cir. 1984) ...........................................................................................3

*Godin v. Schencks*,
    629 F.3d 79 (1st Cir. 2010) ................................................................................................8

*Hanna v. Plumer*,
    380 U.S. 460 (1965) .......................................................................................................5, 10

*Hicks-Bey v. United States*,
    649 A.2d 569 (D.C. 1994) .................................................................................................11

*Intercon Solutions, Inc. v. Basel Action Network*,
    969 F. Supp. 2d 1026 (N.D. Ill. 2013) ...............................................................................9

*ITN Flix, LLC v. Hinojosa*,
    2017 WL 1229740 (9th Cir. Apr. 4, 2017) .......................................................................13

*Jordan-Benel v. Universal City Studios, Inc.*,
    859 F.3d 1184 (9th Cir. 2017) ..........................................................................................13

*Lee v. Flintkote Co.*,
   593 F.2d 1275 (D.C. Cir. 1979) ........................................................................12

*Maloney v. T3Media, Inc.*,
   853 F.3d 1004 (9th Cir. 2017) ..........................................................................13

*Maxwell Stepanuk, Jr., D.O., P.C. v. State Farm Mutual Automobile Insurance
   Co.*, 1995 WL 553010 (E.D. Pa. Sept. 19, 1995) .............................................12

*McGary v. Crowley*,
   --- F. Supp. 3d ---, 2017 WL 3129722 (D.D.C. July 20, 2017) ...................10, 11

*Mireskandari v. Associated Newspapers, Ltd.*,
   665 F. App'x 570 (9th Cir. 2016) ......................................................................13

*Novak v. Capital Management & Development Corp.*,
   452 F.3d 902 (D.C. Cir. 2006) ............................................................................3

*Parker v. Hoglander*,
   2016 WL 3527014 (D.D.C. June 23, 2016) ........................................................8

*Safari Club International v. Rudolph*,
   862 F.3d 1113 (9th Cir. 2017) ..........................................................................13

*Sansoe v. Ford Motor Co.*,
   668 F. App'x 718 (9th Cir. 2016) ......................................................................13

*Schatz v. Republican State Leadership Committee*,
   669 F.3d 50 (1st Cir. 2012) ...............................................................................14

*Sherrod v. Breitbart*,
   843 F. Supp. 2d 83 (D.D.C. 2012) ......................................................................6

*Siegel v. Mazda Motor Corp.*,
   835 F.2d 1475 (D.C. Cir. 1987) .....................................................................3, 11

*Tavoulareas v. Piro*,
   93 F.R.D. 35 (D.D.C. 1981) ...............................................................................15

*United States v. Torres*,
   115 F.3d 1033 (D.C. Cir. 1997) ........................................................................10

*Unity Healthcare, Inc. v. County of Hennepin*,
   308 F.R.D. 537 (D. Minn. 2015) .........................................................................7

*Walker v. Armco Steel Corp.*,
   446 U.S. 740 (1980) ............................................................................................4

**Statutes**

D.C. Code
    § 16-5502 ..................................................................................................1, 3, 7, 14, 15, 16
    § 16-5504 ........................................................................................................................2

WASH. REV. CODE ANN. § 4.24.525............................................................................................9

**Other Authorities**

58 D.C. Reg. 17 (Apr. 29, 2011)................................................................................................2

17A-124 Moore's Federal Practice – Civil § 124.22 ................................................................12

FEDERAL RULE OF CIVIL PROCEDURE 26 ...................................................................................7

FEDERAL RULE OF CIVIL PROCEDURE 56 ...............................................................................7, 14

## INTRODUCTION

In making its special motion to dismiss under the District of Columbia Anti-SLAPP Act of 2010, D.C. Code § 16-5502(a), defendant The Associated Press ("AP") demonstrated in a straightforward fashion why the D.C. Anti-SLAPP Act ("Anti-SLAPP Act" or "Act") applies to this defamation claim by plaintiff Oleg Deripaska:

1.      The Anti-SLAPP Act secures the prompt dismissal of any claim arising out of "an act in furtherance of the right of advocacy on issues of public interest," unless the plaintiff can show that "the claim is likely to succeed on the merits."  D.C. Code § 16-5502(a)-(b).

2.      In *Abbas v. Foreign Policy Group, LLC,* the D.C. Circuit, in the absence of guidance from the D.C. Court of Appeals on the meaning of the Act's protections, predicted that its "likely to succeed on the merits" standard would be construed to set a different bar for dismissing a claim governed by the Act than either Rule 12 or Rule 56 of the Federal Rules of Civil Procedure, and on that basis held that the protections of the Anti-SLAPP Act were not available to a defendant sued in federal court.  783 F.3d 1328 (D.C. Cir. 2015).

3.      In *Competitive Enterprise Institute v. Mann,* the D.C. Court of Appeals subsequently pronounced that the Act's likely to succeed standard *does in fact* "simply mirror the standards imposed by Federal Rule 56."  150 A.3d 1213, 1238 n.32  (D.C. 2016) (citation and internal marks omitted).

4.      Because *Mann* "clearly and unmistakably renders" *Abbas* "inaccurate" in its prediction of D.C. law, the "more recent expression of the law" from the D.C. Court of Appeals should now be applied.  *Easaw v. Newport*, --- F. Supp. 3d ---, 2017 WL 2062851, at *10 (D.D.C. May 12, 2017).  In other words, because the "likely to succeed on the merits" standard in the Act can no longer be said to conflict with the federal rules, under *Erie Railroad Co. v.*

1

*Tompkins*, 304 U.S. 64 (1938), the Act's protections must be available to defendants in federal court as well as state court.

5.       Plaintiff's defamation claim arising out of AP's March 22, 2017 news report triggers the protections of the Anti-SLAPP Act.

6.       Because Deripaska has failed to state a claim, for all the reasons set out in support of AP's Rule 12(b)(6) motion, this lawsuit cannot be deemed "likely to succeed on the merits" and must therefore be dismissed and AP awarded the costs of this litigation, including reasonable attorneys' fees, pursuant to the Act, D.C. Code § 16-5504(a).[1]

Deripaska's opposition misperceives the holding of *Abbas*, misstates the effect of *Mann*, and misinterprets the provisions of the Anti-SLAPP Act itself.  Deripaska fails to justify a refusal to apply the Anti-SLAPP Act in this case and fails to meet his burden to avoid dismissal under the Act.  Moreover, Deripaska's insistence that discovery should proceed before a dismissal confirms that his true goal in bringing this meritless lawsuit is to punish AP by imposing the costs, burdens and disruptions of litigation, or to uncover AP's sources.  But the Anti-SLAPP Act seeks to guard against precisely such attempts to use the tools of civil discovery "as a means to prevent or punish."  *See* Decl. of Chad R. Bowman Ex. A at 4, July 3, 2017, ECF No. 7-1. The Act's protections are vital to protect First Amendment interests and public discourse, and they should apply fully here.

---

[1] Deripaska claims that the Court cannot award fees and costs here because "doing so would require retroactive application of a statute in violation of D.C. law."  Pl.'s Mem. in Opp. to Def.'s Special Mot. to Dismiss ("Opp.") 1 n.1, Aug. 16, 2017, ECF No. 9.  The objection is baseless.  The Anti-SLAPP Act became effective six years before Deripaska filed this lawsuit, *see* 58 D.C. Reg. 17 (Apr. 29, 2011), and *Mann* was decided in December 2016, five months before this case began.

**ARGUMENT**

## I.   DETERMINING WHETHER THE ANTI-SLAPP ACT APPLIES
IN FEDERAL COURT IS NOT SOLELY A FEDERAL QUESTION

The opposition wrongly contends that the determination of whether to apply the Act in this case presents solely a question of federal law so that *Abbas* remains controlling.  The central task before the D.C. Circuit in *Abbas* was to determine whether the Anti-SLAPP Act conflicts with or complements the Federal Rules of Civil Procedure.  Mem. of P. & A. in Supp. of Def.'s Special Mot. to Dismiss ("AP Mem.") 6-7, July 3, 2017, ECF No. 7.  Although superficially a question of federal law, the key question in this analysis for the *Abbas* court was its interpretation of *state law*:  specifically, how to interpret the Act's requirement that a claim must be dismissed unless it is "likely to succeed on the merits."  D.C. Code § 16-5502(b).

When faced with an unresolved question of state law in a federal diversity case, the D.C. Circuit has defined its "duty" to be answering the question in the manner that best predicts how the District of Columbia Court of Appeals would answer were it presented with the question. *Friends for All Children, Inc. v. Lockheed Aircraft Corp.*, 746 F.2d 816, 824 (D.C. Cir. 1984); *see also Novak v. Capital Mgmt. & Dev. Corp.*, 452 F.3d 902, 907 (D.C. Cir. 2006) ("Our duty, then, is to achieve the same outcome we believe would result if the District of Columbia Court of Appeals considered this case."); *Siegel v. Mazda Motor Corp.*, 835 F.2d 1475, 1478 (D.C. Cir. 1987) (same).  As the *Abbas* court noted, at the time of its decision "the D.C. Court of Appeals ha[d] never interpreted the D.C. Anti-SLAPP Act's likelihood of success standard to simply mirror the standards imposed by Federal Rules 12 and 56. "  783 F.3d at 1335.  The D.C. Circuit thus made its best prediction and concluded that the Act's "likelihood of success standard" would be interpreted to be "different from and more difficult for plaintiffs to meet than the standards imposed by Federal Rules 12 and 56." *Id.*

Having made that prediction, the *Abbas* court reasoned that a plaintiff in federal court applying D.C. law would have to clear as many as three bars of differing heights before reaching trial: the Rule 12 standard governing a motion to dismiss, the Rule 56 standard governing a motion for summary judgment, and the "likely to succeed on the merits" standard governing a special motion to dismiss pursuant to the Anti-SLAPP Act.  Under the Anti-SLAPP Act, as so interpreted, a "plaintiff is *not* able to get to trial just by meeting those Rules 12 and 56 standards," and the Act thus "conflicts with the Federal Rules by setting up an additional hurdle a plaintiff must jump over to get to trial."  *Abbas*, 783 F.3d at 1334.  To the *Abbas* court, the imposition of such an "additional hurdle"– set at the height where it predicted the D.C. Court of Appeals would place it – rendered the Anti-SLAPP Act inapplicable in federal court.

The *Abbas* court's prediction of D.C. law has since been proven wrong.  In *Mann*, the D.C. Court of Appeals expressly interpreted the Anti-SLAPP Act's "likely to succeed on the merits" standard to "simply mirror the standards imposed by Federal Rule 56."  150 A.3d at 1238 n.32 (citation and internal marks omitted).  In light of *Mann*, therefore, a plaintiff in either state or federal court must clear only two bars to get to trial: the initial Rule 12 pleading standard on a motion to dismiss, and the higher Rule 56 standard on both a special motion to dismiss and a motion for summary judgment.  Rather than creating the tension predicted by the *Abbas* court, the Anti-SLAPP Act and the federal rules "'exist side by side, . . . each controlling its own intended sphere of coverage without conflict.'"  *Burke v. Air Serv Int'l, Inc.*, 685 F.3d 1102, 1108 (D.C. Cir. 2012) (quoting *Walker v. Armco Steel Corp.*, 446 U.S. 740, 752 (1980)).

Given that the conflict predicted by *Abbas* does not exist, federal courts must apply the Anti-SLAPP Act when sitting in diversity to advance "the twin aims of the Erie rule:

4

discouragement of forum-shopping and avoidance of inequitable administration of the laws."

*Hanna v. Plumer*, 380 U.S. 460, 468 (1965).  The Anti-SLAPP Act must apply here.

## II.    DERIPASKA'S ATTEMPTS TO CONJURE UP A NEW CONFLICT ARE WITHOUT MERIT

In the face of the D.C. Court of Appeals' pronouncement in *Mann* that the Anti-SLAPP

Act's standard for dismissal aligns with that of the federal rules, Deripaska casts about for a new

conflict to substitute, but none exists.  Deripaska's novel theories for why the Anti-SLAPP Act

still cannot apply in federal court do not withstand scrutiny.

### A.    The Anti-SLAPP Act Does Not Conflict With Rule 56

Deripaska argues that even after *Mann*, the Anti-SLAPP Act remains "incompatible"

with Rule 56.  Opp. 11-14.  First, Deripaska asserts that the Anti-SLAPP Act differs from Rule

56 in "shift[ing] the burden from defendant (the moving party), in the context of summary

judgment, to plaintiff (the non-moving party)."  Opp. 12.  But this asks the Court to disregard

what the D.C. Court of Appeals actually said in pronouncing that the "D.C. Anti-SLAPP Act's

likelihood of success standard . . . simply mirror[s] the standards imposed by Federal Rule 56."

*Mann*, 150 A.3d at 1238 n.32 (citation and internal marks omitted).

Deripaska's argument also ignores the Supreme Court's opinion in *Celotex Corp. v.*

*Catrett.*  The Court there explained that "where the nonmoving party will bear the burden of

proof at trial on a dispositive issue, a summary judgment motion may properly be made in

reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file,"

and that in such a situation, Rule 56 "therefore requires the nonmoving party to go beyond the

pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and

admissions on file, designate specific facts showing that there is a genuine issue for trial."  477

U.S. 317, 324 (1986) (internal marks omitted).  Here, AP has demonstrated that Deripaska's

defamation claim fails as a matter of law for all the reasons set out in support of its Rule 12(b)(6) motion.  Deripaska would be equally obliged under Rule 56 and the Anti-SLAPP Act to rebut that argument by showing that there is a "genuine issue for trial" and that AP is not entitled to judgment as a matter of law.  That Deripaska cannot do so because his pleading fails on its face does not somehow create a conflict between the Anti-SLAPP Act and Rule 56.  Finally, even if Deripaska were correct that the Anti-SLAPP Act shifts the burden of proof onto him, his argument that the Act is merely procedural still would fail.  As noted in *Sherrod v. Breitbart*, 843 F. Supp. 2d 83, 85 n.4 (D.D.C. 2012), *aff'd on other grounds*, 720 F.3d 932 (D.C. Cir. 2013), "courts have found that the allocation of the burden of proof is substantive."

Second, Deripaska argues that the Anti-SLAPP Act conflicts with Rule 56 because the Act "fail[s] to require that all inferences be made in favor of the non-moving party."  Opp. 13. But the text of the Anti-SLAPP Act – like that of Rule 56 – is silent about how such inferences are to be drawn, and Deripaska does not identify a single authority holding that the D.C. Anti-SLAPP Act requires any inferences to be drawn *against* the non-moving party.  To the contrary, the D.C. Court of Appeals has explained that "to remove doubt that the Anti-SLAPP statute respects the right to a jury trial, the standard to be employed by the court in evaluating whether a claim is likely to succeed may result in dismissal only if the court can conclude that the claimant could not prevail *as a matter of law*, that is, after allowing for the weighing of evidence and permissible inferences by the jury."  *Mann*, 150 A.3d at 1236.  In short, *Mann* has already addressed and allayed Deripaska's concerns about the direction in which inferences are drawn under the Anti-SLAPP Act.

Third, Deripaska suggests that the Anti-SLAPP Act conflicts with Rule 56 because a special motion under the Act can be filed pre-discovery and because the Act provides for

discovery by the non-movant in response only with the court's permission.  Opp. 13-14.  On this point Deripaska cites a Minnesota district court decision addressing that state's Anti-SLAPP law, which characterized its equivalent discovery provision as "oil to the water of Rule 56's more permissive standard."  Opp. 14 (quoting *Unity Healthcare, Inc. v. Cty. of Hennepin*, 308 F.R.D. 537, 541 (D. Minn. 2015)).  The argument is unavailing.

The D.C. Anti-SLAPP Act simply provides that "[w]hen it appears likely that targeted discovery will enable the plaintiff to defeat the motion and that the discovery will not be unduly burdensome, the court may order that specified discovery be conducted."  D.C. Code § 16-5502(c)(2).  Deripaska does not explain how this could possibly conflict with Rule 56 when Rule 56(b) allows a party to "file a motion for summary judgment at any time until 30 days after the close of all discovery," and Rule 56(d) states that the court may "allow time . . . to take discovery" when "a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition."[2]  Indeed, as Judge Bates recently noted:

> There is no rule that summary judgment cannot be sought or granted before discovery.  Rule 56(b) states that unless a local rule or court order says otherwise . . . , "a party may file a motion for summary judgment at any time until 30 days after the close of all discovery."  A motion for summary judgment can thus be too late, but not too early; "at any time" does in fact mean "at any time."

> It's not hard to see why this is the rule.  A defendant might, at the outset of a case, already possess incontrovertible evidence that would defeat the plaintiff's claim—an evidentiary silver bullet, so to speak.  If so, efficiency counsels in favor of letting the defendant pull the summary judgment trigger immediately.  Why put parties through the burden of discovery if there's already indisputable evidence that defeats the claim?

> * * *

> Rule 56 instructs a party in [plaintiff]'s position what to do if he believes discovery is necessary to fend off an early summary judgment motion:

---

[2] Moreover, Rule 26(b)(1) protects against unduly burdensome discovery as a general matter.

> "show by affidavit or declaration that, for specified reasons, it cannot
> present facts essential to justify its opposition." Fed. R. Civ. P. 56(d).  The
> court may then defer consideration of the motion, deny it, let the non-
> movant have discovery, or take any other appropriate action.  *Id.*

*Parker v. Hoglander*, 2016 WL 3527014, at *3-4 (D.D.C. June 23, 2016) (citations, internal

marks, and alterations omitted).

A plaintiff facing a pre-discovery special motion to dismiss under the Anti-SLAPP Act is

in precisely the same position as a plaintiff facing a pre-discovery motion for summary judgment

under Rule 56.  In both cases, the plaintiff may ask the court to permit discovery in response, and

the court may oblige – or not – based on the ability of the plaintiff to demonstrate an actual need

for the discovery to respond to the specific motion.  *Cf. Godin v. Schencks*, 629 F.3d 79, 90 (1st

Cir. 2010) (finding no "actual conflict" between Maine's anti-SLAPP law and Rule 56 on

plaintiff's entitlement to discovery for this reason).  On this point as well, Deripaska has failed to

identify a real rather than a contrived conflict between the Anti-SLAPP Act and Rule 56.

At bottom, it is hard to imagine how the D.C. Court of Appeals could have been clearer

when, prompted by the D.C. Circuit's observation that the Court of Appeals "has never

interpreted the D.C. Anti-SLAPP Act's likelihood of success standard to simply mirror the

standards imposed by Federal Rule 56," it responded, "We do so now."  *Mann*, 150 A.3d at 1238

n.32 (citation and internal marks omitted).  Deripaska's attempts to identify some lingering

conflict in spite of that holding are all without merit, and this Court should accordingly find that

there is no conflict between Rule 56 and the Anti-SLAPP Act.

### B.     The Anti-SLAPP Act Does Not Conflict With Rule 12

Somewhat confusingly, Deripaska also argues that even if the Anti-SLAPP Act's "likely

to succeed on the merits" standard is identical to that of Rule 56, per *Mann*, the Act still cannot

apply in federal court because its standard would conflict with that of Rule 12.  Opp. 10-11.  In

support of this point, Deripaska cites a case addressing the State of Washington's Anti-SLAPP

law, which provides that in deciding whether the law applies and whether its protections are

warranted, "the court *shall* consider pleadings and supporting and opposing affidavits stating the

facts upon which the liability or defense is based." Wash. Rev. Code Ann. § 4.24.525(4)(c)

(emphasis added).  A decision from the Northern District of Illinois found that this "mandatory"

language conflicted with Rule 12(d), which "grants the trial court discretion in determining

whether to convert a Rule 12 motion to a motion for summary judgment and whether to accept

materials outside of the pleadings." *Intercon Sols., Inc. v. Basel Action Network*, 969 F. Supp. 2d

1026, 1047 (N.D. Ill. 2013), *aff'd on other grounds*, 791 F.3d 729 (7th Cir. 2015).  Deripaska

cites no such language in the D.C. Anti-SLAPP Act because none exists.  These concerns are

entirely unfounded here.

It appears that Deripaska's argument on this point may stem from a simple misreading of

*Abbas*.  There, the D.C. Circuit predicted that the Anti-SLAPP Act's "likely to succeed on the

merits" standard was different from that of both Rule 12 and Rule 56, such that the Anti-SLAPP

Act "set[] up an additional hurdle a plaintiff must jump over to get to trial." *Abbas*, 783 F.3d at

1334.  Now that *Mann* has clarified that the Anti-SLAPP Act's test mirrors that of Rule 56,

Deripaska is essentially arguing that the Anti-SLAPP Act still conflicts with the federal rules

because *Rule 56's standard* is itself different from *Rule 12's standard*.  But as the court

explained in *Abbas*, the problem it perceived was that "[u]nder the D.C. Anti-SLAPP Act, the

plaintiff is *not* able to get to trial just by meeting those Rules 12 and 56 standards."  783 F.3d at

1334.  That is no longer a concern in the wake of *Mann*:  a plaintiff can get to trial by meeting

the Rule 12 standard on a motion to dismiss and the Rule 56 standard on both a motion for

summary judgment and a special motion to dismiss under the Anti-SLAPP Act.  There is no conflict.

The D.C. Anti-SLAPP Act, as now interpreted by the D.C. Court of Appeals, does not clash with the federal rules, and providing the Act's protections only in state court would manifestly lead to "forum-shopping and avoidance of inequitable administration of the laws." *Hanna*, 380 U.S. at 468.  The Act is substantive under *Erie* and must be applied in federal court as well as in state court.

## III.    DERIPASKA'S ARGUMENT THAT THIS COURT MUST KEEP FOLLOWING *ABBAS* IS UNFOUNDED

As a fallback position, Deripaska asserts that "[e]ven if this Court were to find that [AP has] the better reading of *Mann*, it would still lack the authority to apply the D.C. Anti-SLAPP Act because *Abbas* is binding precedent and may only be overruled, if at all, by the D.C. Circuit."  Opp. 4-7.  This argument misapprehends the D.C. Circuit's holding in *Abbas* and mischaracterizes the task before this Court under *Erie* and its progeny.

Deripaska cites only two cases on this point: *United States v. Torres*, 115 F.3d 1033 (D.C. Cir. 1997), and *McGary v. Crowley*, --- F. Supp. 3d ---, 2017 WL 3129722 (D.D.C. July 20, 2017).  Each is inapposite.  In *Torres*, the district court was asked to interpret Rule 33 of the Federal Rules of Criminal Procedure, and it expressly "disavow[ed] District of Columbia precedent and embrace[d] the approach taken by all other federal courts in this country."  115 F.3d at 1035-36.  On appeal, the D.C. Circuit set out the unremarkable proposition that "district judges, like panels of this court, are obligated to follow controlling circuit precedent until either we, sitting en banc, or the Supreme Court, overrule it."  *Id.* at 1036.[3]  In *McGary*, the district

---

[3] The D.C. Circuit affirmed the district court's decision, however, characterizing the point of law that the district court chose not to follow as mere dictum.  *Torres*, 115 F.3d at 1036-37.

court attempted to answer a question of statutory interpretation of *federal* employment law, finding tension between a ruling of the Supreme Court and two decisions of the D.C. Circuit. 2017 WL 3129722, at *3-5.  Neither of these decisions addressed questions of state law or the role of the district court specifically when sitting in diversity, the issues before the Court in this case.

Deripaska's argument further fails in asserting that "[t]he D.C. Circuit expressly considered but rejected [the] argument that the Anti-SLAPP Act's Special Motion imposes the same standard for deciding whether a case may proceed to trial as does the federal standard at summary judgment under Fed. R. Civ. P. 56."  Opp. 7.  That is simply not correct.  The D.C. Court of Appeals, not the D.C. Circuit, is the "final expositor of District of Columbia Law." *Hicks-Bey v. United States*, 649 A.2d 569, 580 n.7 (D.C. 1994).  What the D.C. Circuit actually did in *Abbas* was engage in its "best effort to project or predict how the District of Columbia courts would rule" on the question of how to interpret the Anti-SLAPP Act's "likely to succeed on the merits" standard.  *Siegel*, 835 F.2d at 1478.  Based on its prediction that the standard differed from both Rule 12 and Rule 56, the D.C. Circuit concluded that the Act and federal rules were in conflict.  *Abbas*, 783 F.3d at 1333-34.

In the absence of any relevant, intervening decisions from the D.C. courts, Deripaska would be on solid ground to cite *Torres* and argue that this Court could not substitute its own prediction of how the D.C. Court of Appeals would rule on this issue of D.C. law for the D.C. Circuit's prior prediction on the same issue.  But the D.C. Court of Appeals *did* subsequently rule.  It handed down its ruling in *Mann*, which revealed that the D.C. Circuit had erred in its prediction.  Deripaska is flatly wrong in asserting that *Abbas* "did not turn on a misunderstanding of 'the current state of D.C. law.'"  Opp. 16.  And now that the D.C. Circuit's prediction has

been superseded by a controlling interpretation by the D.C. Court of Appeals, this Court – unlike

the *Abbas* court – knows that the "likely to succeed on the merits" standard of the D.C. Anti-

SLAPP Act "simply mirror[s]" the standard of Rule 56.  *Mann*, 150 A.3d at 1238 n.32.

Chief Judge Howell's opinion in *Easaw* explains what to do in precisely this situation.

"[W]hen the D.C. COA has spoken clearly and unmistakably to the current state of D.C. law, its

views must govern."  *Easaw*, 2017 WL 2062851, at *9.  That is because "in a diversity case, this

Court must apply the current substantive law of the District of Columbia."  *Id.*  Indeed, taking the

opposite approach and "applying an outdated and incorrect interpretation of D.C. law by the D.C.

Circuit would 'subvert the dual aims of *Erie*: discouraging forum shopping and promoting

uniformity within any given jurisdiction on matters of local substantive law.'"  *Id.* (quoting *Lee

v. Flintkote Co.*, 593 F.2d 1275, 1279 n.14 (D.C. Cir. 1979)).  Therefore, "when a decision by the

D.C. COA clearly and unmistakably renders inaccurate a prior decision by the D.C. Circuit

interpreting D.C. law, this Court should apply the D.C. COA's more recent expression of the

law."  *Id.* at *10; *see also Maxwell Stepanuk, Jr., D.O., P.C. v. State Farm Mut. Auto. Ins. Co.*,

1995 WL 553010, at *2 (E.D. Pa. Sept. 19, 1995) (collecting cases); 17A-124 Moore's Fed.

Prac. – Civ. § 124.22 ("When a higher federal court has ruled on a particular point of state law, a

lower court must ordinarily follow that decision in the absence of an intervening, authoritative

state decision.  Some courts hold that a prior federal appellate decision is persuasive, while

others consider a prior decision from the same circuit to be binding in the absence of an

intervening and supervening state court decision.").

Deripaska seeks to avoid this conclusion in two ways.  First, citing no authority, he

argues that even if *Mann* means what it says, the *Abbas* court's ruling on the applicability of the

Anti-SLAPP Act in federal court must still be obeyed because the question of how to interpret

the Act's "likely to succeed on the merits" standard was "merely part of a subsidiary discussion in support of the court's holding" on the *Erie* question. Opp. 16. But the question of how to interpret the Act's "likely to succeed on the merits" standard was entirely dispositive of the D.C. Circuit's ruling that the Act was procedural, not substantive. *See Abbas*, 783 F.3d at 1333-34.

Second, Deripaska incorrectly asserts that "the weight of federal court precedent" supports the non-applicability of Anti-SLAPP laws in federal court. Opp. 17-19. This claim relies on fuzzy math. It discounts rulings from multiple circuits applying state anti-SLAPP laws because, according to Deripaska, those decisions "did not consider" the *Erie* question. Opp. 17-18 & n.9. It also incorrectly suggests that an August 2016 Ninth Circuit decision "undermined" that Circuit's long-held determination that the California anti-SLAPP law is applicable in federal court, when in fact that Circuit has continued to treat the law as applicable in at least a half-dozen cases since that decision.[4] An accurate accounting shows that the weight of authority remains on the side of applying state anti-SLAPP laws in diversity cases in federal court.

In sum, Deripaska has not offered a single cogent argument for why this Court, sitting in diversity, should follow *Abbas*'s disproven prediction about the D.C. Anti-SLAPP Act rather than *Mann*'s subsequent, authoritative interpretation of the law itself. The Court should apply the D.C. Anti-SLAPP Act here.

---

[4] *See Jordan-Benel v. Universal City Studios, Inc.*, 859 F.3d 1184, 1190-93 (9th Cir. 2017) (affirming denial of anti-SLAPP motion); *Maloney v. T3Media, Inc.*, 853 F.3d 1004, 1009-10 (9th Cir. 2017) (affirming grant of anti-SLAPP motion); *ITN Flix, LLC v. Hinojosa*, 2017 WL 1229740, at *3 (9th Cir. Apr. 4, 2017) ("vacat[ing] the grant of the anti-SLAPP motion and remand[ing] for reconsideration under the correct anti-SLAPP analysis"); *Safari Club Int'l v. Rudolph*, 862 F.3d 1113, 1130 (9th Cir. 2017) (affirming grant-in-part and denial-in-part of anti-SLAPP motion); *Mireskandari v. Associated Newspapers, Ltd.*, 665 F. App'x 570, 571 (9th Cir. 2016) (affirming fee award under anti-SLAPP law); *Sansoe v. Ford Motor Co.*, 668 F. App'x 718, 719 (9th Cir. 2016) (affirming denial of anti-SLAPP motion).

IV.   **DERIPASKA'S BASELESS REQUEST**
      **FOR DISCOVERY SHOULD BE DENIED**

Deripaska's request for "targeted discovery" should this Court apply the Anti-SLAPP Act is as meritless as it is telling of a true motive to impose litigation costs and learn the identity of confidential news sources.

D.C. Code § 16-5502(c)(2) provides that "[w]hen it appears likely that targeted discovery will enable the plaintiff to defeat the motion and that the discovery will not be unduly burdensome, the court may order that specified discovery be conducted."  Rule 56(d) similarly permits discovery when a non-movant can demonstrate that "for specified reasons, it cannot present facts essential to justify its opposition."  As discussed above, Deripaska can defeat AP's special motion to dismiss only by pointing to a genuine dispute of material fact and demonstrating that AP is not entitled to judgment as a matter of law.  *See* Rule 56(a).  As AP has shown in its Rule 12(b)(6) motion papers, even assuming the truth of all of the well-pleaded facts in Deripaska's complaint, Deripaska has failed to state a claim for defamation as a matter of law. No amount of discovery would alter the conclusion that the passages challenged by Deripaska (a) are not reasonably capable of conveying the defamatory implications he alleges; (b) are not of-and-concerning him; and/or (c) are assertions of opinion too subjective to be proven true or false and privileged as a matter of law.  *See* Mem. of P. & A. in Supp. of Def.'s Mot. to Dismiss Pursuant to Rule 12(b)(6) 16-28, July 3, 2017, ECF No. 6.  These issues are all questions of law for the Court in the first instance.

Nor is Deripaska, who has failed to plead facts plausibly demonstrating actual malice fault, entitled to discovery on that issue.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (review of pleadings on Rule 12 motion is necessary to prevent plaintiffs from "unlock[ing] the doors of discovery . . . armed with nothing more than conclusions."); *see also Schatz v. Republican State*

*Leadership Comm.*, 669 F.3d 50, 56 (1st Cir. 2012) ("[T]o access discovery mechanisms, a plaintiff must *first* produce a complaint that passes the plausibility test – a test that helps keep defendants from wasting time and money in discovery on 'largely groundless' claims.") (citations omitted).  Such interests in avoiding unnecessary, and unwarranted, discovery are even greater in the context of speech-targeting lawsuits.  Allowing discovery here, where a plaintiff fails even to *allege* a plausible claim, would turn the speech-protective purpose of the Anti-SLAPP Act on its head.  In short, because discovery would not enable Deripaska to overcome AP's special motion to dismiss on any of the alternate dispositive legal grounds raised by AP, his request for discovery must be denied under D.C. Code § 16-5502(c)(2).

Deripaska's request for discovery is noteworthy, however, because it provides a powerful clue about his motive in bringing this baseless defamation claim in the first place.  Deripaska expressly seeks "two documents that are essential to the core of [his] primary allegations": the 2006 contract between himself and Paul Manafort and the "confidential strategy plan" that Manafort proposed to him in 2005.  Opp. 21.  Deripaska asserts that "there is no plausible argument that permitting discovery of these *two* documents, plainly in the AP's possession, would burden the AP in any way."  *Id.* at 22 (emphasis in original).

As Deripaska well knows, however, disclosure of those documents could reveal the confidential source or sources that AP relied on its reporting – indeed, the identity of the source(s) may be a central prize that Deripaska seeks in this lawsuit (along with deterring or punishing critical journalistic inquiry).  Facing a similar situation where plaintiffs sought to compel the production of certain information "the very nature of [which] would reveal the identity of confidential sources," the court in *Tavoulareas v. Piro* allowed *The Washington Post* to decline to respond to such discovery requests when "The Post conclude[d] in the exercise of

15

good faith that a particular response may expose a source to whom the defendants have extended an assurance of confidentiality." 93 F.R.D. 35, 40 (D.D.C. 1981). Permitting discovery of these two documents could similarly impose a serious burden on AP and/or its source(s), and given that discovery cannot salvage Deripaska's claim in any event, such a burden would plainly be unjustified. Deripaska's request for discovery should be denied.

## V.   DERIPASKA'S COMPLAINT MUST BE DISMISSED UNDER THE ANTI-SLAPP ACT

As explained in detail in AP's initial memorandum in support of its special motion to dismiss, Deripaska's claim arises out of "an act in furtherance of the right of advocacy on issues of public interest," triggering the Anti-SLAPP Act's protections. *See* AP Mem. 11-23. While Deripaska argues that the Anti-SLAPP Act is not applicable in federal court generally, he does not contest that it would apply to this lawsuit in particular. And because AP has carried this threshold burden, its special motion to dismiss must be granted unless Deripaska "demonstrates that the claim is likely to succeed on the merits." D.C. Code § 16-5502(b). For all the reasons set out in support of AP's Rule 12(b)(6) memorandum and reply, incorporated fully herein, Deripaska cannot make that necessary showing because he has not even stated a claim for which relief can be granted.

Because Deripaska accordingly cannot demonstrate that his claim is likely to succeed on the merits, his Complaint should be dismissed with prejudice. *See* D.C. Code § 16-5502(b).

## CONCLUSION

For the foregoing reasons, AP respectfully requests that its special motion to dismiss be granted, that Deripaska's Complaint be dismissed expeditiously and with prejudice, and that AP be awarded its fees and costs.

Dated:  September 8, 2017

Respectfully submitted,

LEVINE SULLIVAN KOCH & SCHULZ, LLP

/s/ *David A. Schulz*

*Of Counsel*:

Karen Kaiser
Brian Barrett
The Associated Press
200 Liberty Street
New York, NY 10281
Telephone: (212) 621-7547
Fax: (212) 506-6131
kkaiser@ap.org
bbarrett@ap.org

David A. Schulz (D.C. Bar No. 459197)
Chad R. Bowman (D.C. Bar No. 484150)
Mara J. Gassmann (D.C. Bar No. 1014532)
Maxwell S. Mishkin (D.C. Bar No. 1031356)

1899 L Street, N.W., Suite 200
Washington, D.C. 20036
Telephone: (202) 508-1136
Fax: (202) 861-9888
dschulz@lskslaw.com
cbowman@lskslaw.com
mgassmann@lskslaw.com
mmishkin@lskslaw.com

*Counsel for Defendant The Associated Press*

## **CERTIFICATE OF SERVICE**

I hereby certify that, on this date, I caused defendant Associated Press' Reply Memorandum in Support of its Special Motion to Dismiss Under the D.C. Anti-SLAPP Act to be filed and served electronically via the Court's ECF System upon counsel of record.


Dated: September 8, 2017                    _/s/ David A. Schulz_
                                            David A. Schulz